IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JOSE G. BROCE PINILLA,**<br><br>          Plaintiff,<br><br>                    v.<br><br>**INTERNATIONAL UNION BANK, LLC,**<br><br>          Defendant. | Case No. 3:23cv01525 (RAM)<br><br>RE: *Collection of Money Breach of Contract Prohibited Sales of Assets, Violation of Bulk Sales Act, Fraud, and Damages*<br>(Bench Trial) |

<u>**AMENDED COMPLAINT**</u>

**TO THE HONORABLE COURT:**

**NOW COMES,** Plaintiff, José G. Broce Pinilla, by his undersigned attorneys, and very respectfully STATES, ALLEGES, and PRAYS as follows:

**I.    THE PARTIES**

1.    Plaintiff, José G. Broce Pinilla, is of legal age, single, an attorney at law and resident of Panama City, Panama. His address is: PH Oceania Business Plaza, Torre 1000, 17th Floor, Panama City, Panama, 0831.

2.    Defendant, International Union Bank, LLC ("IU Bank"), is a limited liability company, created and registered under the laws of the Commonwealth of Puerto Rico as an international bank, with its principal place of business located at 255 Ponce de Leon Av., MCS Plaza Suite 600, San Juan, Puerto Rico, 00917.

The Office of IU Bank is, however, physically located in Suite 1410 of the MCS Plaza Building.

**II.    JURISDICTION AND VENUE**

3.    The diversity jurisdiction of this Honorable Court is invoked under the provisions of Title 28, United States Code, Section 1332(a)(1), and Article III, Section II of the Constitution of the United States, since the parties are citizens of different countries and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00) exclusive of costs and interest.

4.    Venue is appropriate in this Court pursuant to Title 28, United States Code, Section 1391, as this action is brought in the judicial district in which the Defendant resides and in which the events giving rise to this action occurred.

**III. THE FACTS**

5.    On November 20, 2020, Plaintiff opened an individual deposit bank account ("Cuenta Persona Natural") at IU Bank.  The referenced account is numbered X-XXX-9069 and is in Plaintiff's name ("Plaintiff's account").

6.    From November 20, 2020, until March 2023, Plaintiff made numerous deposits into Plaintiff's account at IU Bank.

7.    As of September 26, 2023, Plaintiff's account had an available balance of Seventy Hundred Six Thousand Twenty-One Dollars with Fourteen Cents ($706,021.14).

2

8.  Since  March  2023,  Plaintiff  has  unsuccessfully attempted to withdraw all the money in Plaintiff's account.

9.  Plaintiff  has  been  in  communication  with  IU  Bank executives,  specifically  Mr.  Luis  Degwitz  and  Ms.  Antonietta Puma,  since  then.    Plaintiff  has  communicated  via  email, telephone, even attended meetings to get IU Bank to give him his money.  All of Plaintiff's efforts have been futile.

10.  As  IU  Bank  continues  refusing  to  disburse  Plaintiff's funds, on September 26, 2023, Plaintiff wrote to IU Bank's Board of Directors demanding that it release his money.

11.  On  September  27,  2023,  after  being  retained  by Plaintiff, the undersigned counsel delivered a letter to IU Bank demanding  release,  within  ten  (10)  days,  of  the  amount  in Plaintiff's account, which is being illegally held by IU Bank.

12.  IU  Bank  did  not  comply  with  Plaintiff's  request.  On October 10, 2023, in a last attempt to obtain the disbursement of  the  finds  held  in  deposit,  the  undersigned  counsel  sent another  letter  to  IU  Bank.    Instead,  IU  Bank  engaged  legal representation who responded. The undersigned counsel provided a final term to issue payment, but none was sent and received.

13.  IU  Bank  continues  to  delay  the  requested  disbursement by offering unacceptable payment terms and deadlines.

14.  On October 30, 2023, and only after this action had already been filed on October 17, 2023 **[Docket No. 1]**, did IU

Bank request Plaintiff to initiate a transfer of 25% of the available balance of Plaintiff's account to Plaintiff. IU Bank transferred $176,516.82 to Plaintiff.

15. On October 30, 2023, IU Bank represented to Plaintiff that it would transfer the remaining balance of his account, $529,602.81, by November 10, 2023.

16. IU Bank failed to transfer the remaining balance by November 10, 2023.

17. During litigation of this action, the Parties reached a Joint Stipulation on Attachment Request and Hearing **[Docket. No. 34]**, wherein IU Bank agreed to complete the transfer of the remaining balance of Plaintiff's account, to wit, $529,602.81, on or before December 5, 2023.

18. IU Bank failed to transfer the remaining balance by December 5, 2023. **[Docket No. 44.]**

19. On December 5, 2023, IU Bank represented that the transfer would be initiated on December 6, 2023.

20. IU Bank failed to transfer the remaining balance by December 6, 2023. **[Docket No. 45.]**

21. On December 6, 2023, IU Bank represented that the transfer would be initiated on December 7, 2023.

22. IU Bank failed to transfer the remaining balance by December 7, 2023. **[Docket No. 47.]**

23. At this time, IU Bank still owes Plaintiff the amount

of Five Hundred Twenty-Nine Thousand Six Hundred and Two Dollars
with Eighty-One Cents ($529,602.81), plus legal interest accrued
since March 2023.

24.  Plaintiff has also requested this Honorable Court that
based on the foregoing pattern of repeated failures to transfer
Mr. Broce's funds, and the fact that the terms of the Joint
Stipulation were entered as an Order of this Honorable Court,
that this Honorable Court, within its inherent power to
guarantee the orderly administration of justice, assess fines,
costs, attorney's fees, and any other appropriate sanction to IU
Bank for its failure to comply with the Order of the Court and
its representations that it would complete the transfer of the
funds to Plaintiff. **[Docket No. 47.]**

    **IV.  CAUSES OF ACTION**

    **A.** *Collection of Money and Breach of Contract*

25.  During the month of November 2020, Plaintiff opened a
personal banking account at IU Bank.

26.  Per the terms and conditions of the banking agreement
between Plaintiff and IU Bank, Plaintiff has the right to
withdraw his money at will, up to the available balance in his
account.

27.  A person that contravenes their obligations to another
must indemnify them for the damages caused. 31 P.R. Laws Ann. §
9303.

28. Plaintiff's account is not a fixed term savings account.

29. Plaintiff has attempted to withdraw his money from his account at IU Bank and Defendant has prevented him from so doing.

30. IU Bank's unwarranted refusal to allow Plaintiff to withdraw his money constitutes a breach of contract.

31. Under Article 1255 of the Civil Code of Puerto Rico, Plaintiff has the right to either terminate the contract if the other party is in default, or demand that it fulfills its obligations. Plaintiff can also demand payment for damages caused. 31 PR Laws Ann. § 9823.

32. The money in Plaintiff's account belongs solely to Plaintiff.

33. At present, Plaintiff's account holds the amount of Five Hundred Twenty-Nine Thousand Six Hundred and Two Dollars with Eighty-One Cents ($529,602.81), of Plaintiff's money.

34. A person is in default from the moment the creditor demands fulfillment of the obligation, and the person does not comply. 31 PR Laws Ann. § 9311.

35. As the money in Plaintiff's account belongs to Plaintiff and not to IU Bank, Defendant owes Plaintiff the amount of Five Hundred Twenty-Nine Thousand Six Hundred and Two Dollars with Eighty-One Cents ($529,602.81), plus legal interest

since March 2023, when Plaintiff first attempted to withdraw his money. The amount of legal interest will be computed in due course since the principal amounts owed by IU Bank to Plaintiff have changed since this litigation was filed and at the times that Plaintiff has demanded IU Bank to transfer the balance available in his account.

36. IU Bank's debt to Plaintiff is liquid, due and payable.

**B. *Damages***

37. IU Bank's unwarranted and illegal withholding of the money held in Plaintiff's account has deprived Plaintiff of the use of his money since March 2023.

38. A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. 31 PR Laws Ann. § 10801.

39. Due to IU Bank's unwarranted and illegal withholding of Plaintiff's money, Plaintiff has suffered, among others, deprivation of the right to use his money, liquidity issues, and lost business opportunities, and an adverse impact on the operations of his legal profession in Panama, which value shall be determined by the Court, but which amount to no less than SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00).

40. Further to the economic losses suffered by Plaintiff, IU Bank's concerted and purposeful actions have caused him

mental pain and suffering.

41. Compensation is appropriate for proven suffering and mental anguish, if these could have been foreseen at the time the obligation was created and are a necessary consequence of its breach. Muniz-Olivari v. Stiefel Labs., 174 D.P.R. 813, 821, 2008 TSPR 152 (2008) (citing Colón v. Glamorous Nails, 167 D.P.R. 33 (2006))

42. Plaintiff has, among other things, suffered intense stress and preoccupation.

43. It is foreseeable that IU Bank's deliberate actions would cause mental pain and suffering to someone who relies on the fulfillment of a deposit contract.

44. Plaintiff's mental anguish and suffering is valued in an amount of no less than ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000.00).

## C. *Violation of Order of Attachment, nullity of sale of IU Bank's assets*.

45. Based on knowledge and information that Plaintiff believes is true, IU Bank has attempted and is attempting to sell some or all its assets, outside the ordinary course of business, to a person by the name of Nicolas Vera.

46. The Order of Attachment by Consent issued by this Honorable Court on December 1, 2023 **[Docket No. 40]**, expressly provides in section (h) that:

Defendant is further forbidden from alienating, transferring, or further encumbering any real property or personal property or from causing others to alienate, transfer or further encumber any personal property owned by Defendant, outside of the ordinary course of business, pending the outcome of this lawsuit.

47. Any sale of assets by IU Bank occurring after December 1, 2023, would therefore be null and void as the transaction was in violation of this Honorable Court's prohibition that IU Bank alienate, transfer, or further encumber any real property or personal property or from causing others to alienate, transfer or further encumber any personal property owned by Defendant, outside of the ordinary course of business, pending the outcome of this lawsuit.

48. The Amended Order of Attachment issued on December 8, 2023, to correct the amount to be attached by $100, also has the same provision of the Original Order of Attachment by Consent.

50. Therefore, if thorough discovery Plaintiff finds that IU Bank sold any assets outside the ordinary course of business, that such sale be declared null and void and the asserts belonging to IU Bank be returned.

**D. _Fraud_.**

51. As it can be ascertained from the December 5, 2023-email, and the email received today, IU Bank could not return Mr. Broce's money to him, prior to receiving "funds in an amount equivalent to the amount of the attachment that were transferred

December 5, 2023," from an unidentified source.

52.   The fact that IU Bank needs to receive "funds in an amount equivalent to the amount of the attachment," which amount is the available balance in Mr. Broce's account, and should be available to him, shows that IU Bank does not have Mr. Broce's money on deposit and in the Bank's control to be able to transfer it. Clearly, if Mr. Broce's money was kept and guarded in his account by IU Bank, as it is required to do, then IU Bank did not need to receive any transfer of funds to comply with Mr. Broce's request to withdraw his money.

53.   Based on the foregoing pattern of repeated failures to transfer Mr. Broce's funds, it can only be concluded that the funds deposited by Mr. Broce in his account at IU Bank are not in his account.

54.   Based on information and knowledge to be true to Plaintiff, other clients of IU Bank have been the subjects of the same situation faced by Plaintiff of not being able to withdraw their funds, and even have credit card transactions tied to their accounts voided.

55.   Hence, IU Bank must have improperly subtracted, withdrawn, or otherwise used Mr. Broce's money for purposes other than honoring the transfer request made by Mr. Broce (and any other client.)

56.   Additionally,   this   action   of   not   having   funds

available to disburse to its clients is a violation of Article 4 of the International Financial Entity Act, Act No. 273-2012. ("IFE Act") that requires IU Bank, as a bank authorized as an International Financial Entity by the Office of the Commissioner of Financial Institutions, to comply with the reserve requirements of said section. Article 4 of the IFE Act requires a minimum of twenty percent (20%) for reserves of deposit accounts. This amount is consistent with Part 1 (3) (3.b) de OCIF's Circular Letter CC-18-03.

57. This is clear indicia of outright fraud. **[Se also Docket No. 45.]**

E. *Violation of Bulk Sales Act.*

58. As mentioned in paragraph 45 of this Amended Complaint, IU Bank has attempted and is attempting to sell some or all its assets, outside the ordinary course of business, to a person by the name of Nicolas Vera.

59. Under the Bulk Sales Act, IU Bank is required to notify all its creditors before selling all or substantially all of its assets, outside the ordinary course of business.

60. Bulk sales that are considered fraudulent null and void if the buyer and the seller fail to notify their creditors at least 12 days before the transaction. PR Laws tit. 1, § 61 (2020).

61. **As to this date, Plaintiff has not received a formal**

**notice regarding this sale of assets of the IU Bank, making any such sale also null and void for the failure to provide the required notice.**

V.    **PRAYER FOR RELIEF**

Based on the foregoing averments, which are true and correct, **Plaintiff prays** that the Court finds and orders that:

a. IU Bank owes Plaintiff the amount of Five Hundred Twenty-Nine Thousand Six Hundred and Two Dollars with Eighty-One Cents ($529,602.81), plus legal interest to be calculated since March 2023, payable immediately.

b. IU Bank's debt to Plaintiff is liquid, due and payable.

c. IU Bank's illegal and unjustified withholding of Plaintiff's money deposited in Plaintiff's account constitutes breach of contract.

d. IU Bank's purposeful and unlawful withholding of Plaintiff's money deposited in Plaintiff's account has caused Plaintiff to suffer economic damages and mental anguish and suffering, estimated in the amount of $700,000.00, and $150,000.00, respectively.

e. IU Bank has illegally sold some or all its assets

outside the ordinary course of business and in violation of this Honorable Court Order of Attachment by Consent or in violation of the provisions of the Bulk Sales Act. The sale of any such asset sold by IU Bank should be declared null and void and the assets ordered to be returned to IU Bank.

f. IU Bank has committed fraud by disposing of Plaintiff's money in his account without his consent and by failing to transfer the available balance on his account, depending on receiving money from a transfer from an unidentified source. This Honorable Court should find that IU Bank's fraudulent actions have caused damages to Plaintiff, and order IU Bank to compensate Plaintiff for such action.

g. Plaintiff further prays that the Court enter judgment ordering IU Bank to pay the amounts stated before, with the imposition of costs, expenses, and attorney's fees incurred by Plaintiff.

**WHEREFORE**, Plaintiff, José G. Broce Pinilla, respectfully requests that the Honorable Court grant the instant Complaint and enter judgment against IU Bank as requested above.

**RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, on December 8, 2023.

**WE HEREBY CERTIFY** that, on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record, all CM/ECF participants in the case.

*/s/ Ramón Coto-Ojeda*
USDC-PR No. 202006
rco@crlawpr.com

*/s/ Edna E. Pérez Román*
USDC-PR No. 213306
epr@crlawpr.com

**COTO & ASSOCIATES**
Counsel for Plaintiff
MCS Plaza, Suite 800
255 Ponce de León Ave.
San Juan, P.R. 00917
PO Box 71449
San Juan, P.R. 00936-8549
Tel: (787) 756-9640
Fax. (787) 756-9641